IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| CERTUSBANK, NA, | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | ) CIVIL ACTION NO. 5:13-CV-418 (MTT) <br> ) |
| JSD – SOUTH LAND RESOURCES, LLC, *et al.*, | ) <br> ) <br> ) |
| Defendants. | ) <br> ) |

## ORDER

Before the Court is Plaintiff CertusBank, N.A.'s motion for summary judgment. (Doc. 20). For the following reasons, the motion is **GRANTED**.

### I.   BACKGROUND

**A.   Note 1**

On May 18, 2011, Defendant JSD – South Land Resources, LLC a/k/a JSD Southland Resources LLC a/k/a JSD South Land Resources, LLC ("JSD") executed a promissory note in favor of Atlantic Southern Bank in the amount of $405,250.00 ("Note 1"). (Doc. 10-1). On the same date, Defendants Southland Appraisals, Inc. ("Southland") and J. Sidney Dumas each executed a guaranty whereby they unconditionally guaranteed "the payment and performance of each and every Debt, of every type, purpose and description that [JSD] … may now or at any time in the future owe [Atlantic Southern]." (Docs. 10-2 at 2; 10-3 at 2). JSD defaulted on Note 1 by failing to make payments when due. On March 1, 2013, the Plaintiff sent a notice of

non-payment and demand for payment under Note 1 to all the Defendants.  (Docs. 10-4; 20-1, ¶ 15).

On April 2, 2013, the Plaintiff conducted a foreclosure sale on certain real property used to secure Note 1 pursuant to the power of sale contained in a July 27, 2006 security deed executed by JSD in favor of Atlantic Southern ("Note 1 security deed").  (Docs. 20-1, ¶¶ 17, 20; 20-1 at 16-23).  The Plaintiff sold the Note 1 security deed property, a tract of land in Jasper County, Georgia, for $252,000.00.  (Doc. 20-1, ¶ 20).  The Superior Court of Jasper County confirmed the Note 1 foreclosure sale on September 17, 2013.  (Doc. 20-1 at 25-29).  Note 1 matured on May 18, 2013.  (Docs. 10-1; 20-1, ¶ 23).

**B.     Note 2**

On March 7, 2011, JSD executed a promissory note in favor of Atlantic Southern in the amount of $665,743.99 ("Note 2").  (Doc. 10-5).  On the same date, Dumas executed a guaranty whereby he unconditionally guaranteed "the payment and performance of each and every Debt, of every type, purpose and description that [JSD] … may now or at any time in the future owe [Atlantic Southern]."  (Doc. 10-6 at 2).[1]  JSD defaulted on Note 2 by failing to make payments when due.  On February 6, 2012, the Plaintiff sent a notice of non-payment and demand for payment under Note 2 to all the Defendants.  (Docs. 10-7; 20-1, ¶ 34).

On March 6, 2012, the Plaintiff conducted a foreclosure sale on certain real property used to secure Note 2 pursuant to the power of sale contained in a July 27, 2007 security deed executed by JSD in favor of Atlantic Southern ("Note 2 security

---

[1] Though Southland did not execute a guaranty on this date, the May 18, 2011 guaranty is not limited to Note 1 and, by its terms, applies to every debt JSD "may now or at any time in the future owe" Atlantic Southern.  (Doc. 10-2 at 2).

deed"). (Docs. 20-1, ¶¶ 36, 39; 20-1 at 42-49). The Plaintiff sold the Note 2 security deed property, a tract of land in Monroe County, Georgia, for $351,750.00. (Doc. 20-1, ¶ 39). The Plaintiff did not obtain confirmation of the Note 2 foreclosure sale. Note 2 matured on March 7, 2013. (Docs. 10-5; 20-1, ¶ 42).

The Plaintiff is the holder of Notes 1 and 2 and the related loan documents by virtue of purchase and assignment from the Federal Deposit Insurance Corporation ("FDIC") as receiver for Atlantic Southern.[2] (Docs. 20-1, ¶¶ 12, 31; 20-1 at 10-14, 31-34; 32-1; 33; 33-1). The Plaintiff seeks to recover the amount outstanding under Note 1 against all the Defendants. The Plaintiff seeks to recover the amount outstanding under Note 2 only against Southland and Dumas ("the Guarantors"). Additionally, the Plaintiff seeks attorneys' fees only against the Guarantors.

## II.   DISCUSSION

### A.   Summary Judgment Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A factual dispute is genuine only if 'a reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)). The burden rests with the moving party to prove that no genuine issue of material fact exists. *Id.* The party may support its assertion that a fact is undisputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or

---

[2] As discussed below, the Defendants contend the Plaintiff has not established it is the holder of the notes.

declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

"If the moving party bears the burden of proof at trial, the moving party must establish all essential elements of the claim or defense in order to obtain summary judgment." *Anthony v. Anthony*, 642 F. Supp. 2d 1366, 1371 (S.D. Fla. 2009) (citing *Four Parcels of Real Prop.*, 941 F.2d at 1438). The moving party must carry its burden by presenting "credible evidence" affirmatively showing that, "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the nonmoving party." *Four Parcels of Real Prop.*, 941 F.2d at 1438. In other words, the moving party's evidence must be so credible that, if not controverted at trial, the party would be entitled to a directed verdict. *Id.*

"If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the nonmoving party, in response, 'comes[s] forward with significant, probative evidence demonstrating the existence of a triable issue of fact.'" *Id.* (quoting *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991)) (alteration in original). However, "credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. ... The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Thus, the Court "'can only grant summary judgment if everything in the record demonstrates that no genuine issue of material fact exists.'" *Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012) (quoting *Tippens v. Celotex Corp.*, 805 F.2d 940, 952 (11th Cir. 1986)).

### B.     Defendants' Liability on Notes and Guaranties

Under Georgia law, "[w]here … the record shows that the promissory notes and guaranties were duly executed by the debtors and that they are in default, a prima facie right to judgment as a matter of law [is] established, and the burden shift[s] to [the defendants] to produce or point to evidence in the record which establishe[s] an affirmative defense." *Secured Realty Inv. v. Bank of N. Ga.*, 314 Ga. App. 628, 629, 725 S.E.2d 336, 338 (2012); *see also Collins v. Regions Bank*, 282 Ga. App. 725, 726, 639 S.E.2d 626, 627 (2006).  The Plaintiff has produced the notes and guaranties, as well as the affidavit of Ray Persenaire, Vice President and commercial asset manager for the Plaintiff, to show the Defendants are in default.  (Docs. 10-1; 10-2; 10-3; 10-5; 10-6; 20-1).  The Defendants do not contest that they executed the notes and guaranties and are in default.  Instead, the Defendants argue: (1) the Plaintiff has not established it is the holder of the notes; (2) the Guarantors are not liable under Note 2 because the Plaintiff failed to confirm the Note 2 foreclosure sale; and (3) the Plaintiff has failed to establish it mitigated its damages on Note 2.

The Defendants first contend that there is no evidence the FDIC had anything of its own to assign to the Plaintiff, including the loan documents at issue.[3]  The assignment at issue purports to assign the *receiver's* (i.e. the FDIC's) right, title, and interest in the loan documents.  (Doc. 20-1 at 11).  According to the Defendants, the FDIC does not take title to the assets of a failed bank when it is appointed as receiver, and thus, the assignment is meaningless.  The Defendants base their argument on 12

---

[3] The Defendants also initially argued the Plaintiffs had not shown the FDIC was appointed as receiver for Atlantic Southern because the Consent Order purportedly appointing the FDIC as receiver was not in the record.  The Plaintiff has since filed the Consent Order, and the Defendants conceded at oral argument that the FDIC was appointed as receiver.  (Doc. 32-1).

U.S.C. § 1821(d), which deals with the FDIC's powers and duties when it is appointed as receiver for a failed bank. While the Defendants concede § 1821(d)(2)(A)[4] appears to provide for an actual transfer of title to the failed bank's assets, they contend this provision really only allows the FDIC to do whatever the failed bank had the right, title, and power to do. In this case, that means the FDIC could assign "*[Atlantic Southern]'s* right, title, and interest in the loan documents *on behalf of* and *in the name of* [Atlantic Southern]." (Doc. 28 at 6).

The Defendants cite two other subsections of § 1821(d) which allegedly support their interpretation. Subsection (d)(2)(B) provides that the FDIC may "take over the assets of and operate" the failed institution, "collect all obligations and money due the institution," "perform all functions of the institution in the name of the institution," and "preserve and conserve the assets and property of such institution." According to the Defendants, there would be no need to distinguish the assets of "the institution" or to specify the FDIC may conduct business "in the name of the institution" if the FDIC automatically took title to all the failed bank's assets when it was appointed as receiver. The Defendants also argue § 1821(d)(2)(G)(i), allowing the FDIC to merge the failed bank with another depository institution and transfer the failed bank's assets, would be meaningless if the FDIC automatically took title to the assets because there would be no assets left to transfer.

The Court disagrees with the Defendants' interpretation. The statute states that the FDIC as receiver succeeds by operation of law to: "(i) all rights, *titles*, powers, and

---

[4] "The Corporation shall, as conservator or receiver, and by operation of law, succeed to--
(i) *all rights, titles, powers, and privileges of the insured depository institution*, and of any stockholder, member, accountholder, depositor, officer, or director of such institution with respect to the institution and the assets of the institution." 12 U.S.C. § 1821(d)(2)(A)(i) (emphasis added).

privileges *of the insured depository institution*, and of any stockholder, member, accountholder, depositor, officer, or director of such institution with respect to the institution and the assets of the institution." 12 U.S.C. § 1821(d)(2)(A) (emphasis added).[5]  Additionally, § 1821(d)(G)(i)(II) allows the FDIC as receiver to "transfer any asset or liability of the institution in default … *without any approval, assignment, or consent with respect to such transfer*." (emphasis added).  Given the clear language of the statute and the broad power it affords the FDIC in its capacity as receiver, it is a stretch to suggest the FDIC had to assign the failed bank's assets *on behalf of* the failed bank.  Not surprisingly, the Defendants have pointed to no authority supporting their interpretation of the statute.[6]

The Guarantors next argue that because the Plaintiff did not get judicial confirmation of the Note 2 foreclosure sale and thus cannot recover a deficiency judgment on Note 2 from JSD, the Plaintiff cannot obtain a deficiency judgment on Note 2 from them.  Pursuant to O.C.G.A. § 44-14-161(a),

> When any real estate is sold on foreclosure, without legal process, and under powers contained in security deeds, … and at the sale the real estate does not bring the amount of the debt secured by the deed, … no action may be taken to obtain a deficiency judgment unless the person instituting the foreclosure proceedings shall, within 30 days after the sale,

---

[5] The Defendants' contention at oral argument that "titles … of the insured depository institution" means the FDIC as receiver succeeds to all officer titles of the failed bank, and hence has the power to do whatever those officers could do, is without merit.  If that were the case, there would be no need for the second clause of that subsection, which specifically refers to the rights, titles, powers, and privileges "of any stockholder, member, accountholder, depositor, *officer*, or director of such institution with respect to the institution and the assets of the institution."

[6] Further, the FDIC also succeeded to the assets of Atlantic Southern upon its appointment as receiver under Georgia law.  *See* O.C.G.A. § 7-1-151(c) (public body of the United States appointed as receiver has all the "rights, powers and duties" the Georgia Department of Banking and Finance ("GDBF") has if appointed as receiver); § 7-1-157(a) (GDBF "shall be vested … with the title or the right to possession of all property to which the financial institution has title or right of possession").

>report the sale to the judge of the superior court of the county in which the land is located for confirmation and approval and shall obtain an order of confirmation and approval thereon.

Though the Plaintiff cannot recover a deficiency judgment on Note 2 from JSD, the waivers contained in the guaranties preclude the Defendants' argument. The guaranties contain general language that the Guarantors "waive defenses that may be available based on … the status of a party to the Debt or this Guaranty" and specific waiver provisions, including subsection (9): "I agree to waive reliance on any anti-deficiency statutes, through subrogation or otherwise, and such statutes in no way affect or impair my liability." (Docs. 10-2 at 3; 10-3 at 3; 10-6 at 3). Further, Section 4 of the guaranties provides that the Guarantors are unconditionally liable even if the debt becomes unenforceable against the borrower or if the borrower "has such obligation discharged in bankruptcy, *foreclosure*, or otherwise discharged by law." (Docs. 10-2 at 2; 10-3 at 2; 10-6 at 2) (emphasis added).[7] The Georgia Court of Appeals has upheld similar waivers. *See Cmty. & S. Bank v. DCB Invs., LLC*, 760 S.E.2d 210, 214-17 (Ga. App. 2014); *HWA Props., Inc. v. Cmty. & S. Bank*, 322 Ga. App. 877, 885-88, 746 S.E.2d 609, 616-17 (2013).

Finally, the Guarantors contend they are not liable on Note 2 because the Plaintiff failed to mitigate its damages. While they acknowledge Georgia law generally does not require a creditor to mitigate its damages by foreclosing on collateral before suing on a note, they contend that in this case the Plaintiff was required to "establish[ ]

---

[7] The Guarantors rely on Section 2 of the guaranties, which states the Guarantors are guaranteeing debts that JSD owes Atlantic Southern. (Docs. 10-2 at 2; 10-3 at 2; 10-6 at 2). Because JSD no longer owes the debt, they reason that they also no longer owe the debt. However, as the Plaintiff points out, failure to confirm the Note 2 foreclosure sale did not operate to extinguish the remaining debt; it merely foreclosed one of the Plaintiff's remedies. *Taylor v. Thompson*, 158 Ga. App. 671, 672, 282 S.E.2d 157, 158 (1981).

that it took reasonable steps to minimize damages" because it chose to mitigate its damages by foreclosing on property used to secure Note 2.  (Doc. 28 at 14).  This argument is flawed for several reasons.

First, as the Defendants acknowledge, Georgia courts have determined there is no duty to mitigate when there is an absolute promise to pay.[8]  *See Ameris Bank v. Alliance Inv. & Mgmt. Co.*, 321 Ga. App. 228, 234-35, 739 S.E.2d 481, 486-87 (2013); *see also REL Dev., Inc. v. Branch Banking & Trust Co.*, 305 Ga. App. 429, 431, 699 S.E.2d 779, 781 (2010) (holding that holder of note and deed to secure debt does not have to elect remedies).  Second, the guaranties expressly allow the Plaintiff to pursue "any and all remedies … under state or federal law or in any documents relating to the Debt" and provide that "by choosing any one or more of these remedies [the lender does] not give up [its] right to use any other remedy."  (Docs. 10-2 at 3-4; 10-3 at 3-4; 10-6 at 3-4).  Finally, even assuming failure to mitigate is a viable defense in this context, it is an affirmative defense for which the Defendants have the burden of proof.  *W. Host Atlanta, Inc. v. Bass*, 183 Ga. App. 160, 161, 358 S.E.2d 312, 312 (1987); *Considine Co. of Ga., Inc. v. Turner Commc'ns Corp.*, 155 Ga. App. 911, 913, 273 S.E.2d 652, 655 (1980).

---

[8] The guaranties each provide that the Guarantors "*absolutely and unconditionally* agree to all terms of and guaranty to you the payment and performance of each and every Debt … that [JSD] … may now or at any time in the future owe you." (Docs. 10-2 at 2; 10-3 at 2; 10-6 at 2) (emphasis added).

Therefore, the Plaintiff is entitled to summary judgment on the Defendants' liability for the amounts due under Note 1 and the Guarantors' liability for the amounts due under Note 2.[9]

### C.    Damages and Attorneys' Fees

The Plaintiff is also entitled to summary judgment on the amount of damages and attorneys' fees.  The Plaintiff has presented evidence of the amounts due under both notes, and the Defendants have not contested the amounts.  As of August 21, 2014, the total amount due under Note 1 was $188,391.40, which includes $153,250.00 in principal, $12,385.58 in accrued interest, and $22,755.82 in charges.  (Doc. 20-1, ¶ 24).  Interest continues to accrue at $24.48 per day.  *Id.*  As of the same date, the total amount due under Note 2 was $281,285.98, which includes $229,963.13 in principal, $31,549.66 in accrued interest, and $19,773.19 in charges.  (Doc. 20-1, ¶ 43).  Interest continues to accrue at $35.13 per day.  *Id.*  Therefore, as of the date of this Order, the Defendants owe $190,227.40 under Note 1, and the Guarantors owe $283,920.73 under Note 2.

The Guarantors are also liable for attorneys' fees.  Section 11 of the guaranties provides that the Plaintiff may recover "reasonable attorneys' fees" in enforcing the guaranties and related loan documents.  (Docs. 10-2 at 4; 10-3 at 4; 10-6 at 4).

---

[9] In their answer, the Defendants challenge this Court's subject matter jurisdiction, contending both the Plaintiff and the Defendants are citizens of Georgia. (Doc. 14 at 1).  In the amended complaint, the Plaintiff alleges it is a national banking association with its principal place of business in South Carolina. (Doc. 10, ¶ 1).  In support of its motion for summary judgment, the Plaintiff also submitted the affidavit of Thomas A. Simpson, the Plaintiff's corporate secretary, and its Articles of Association to show its main office is located in South Carolina. (Doc. 20-2). The Supreme Court has held that a national bank's citizenship for purposes of diversity jurisdiction is the state in which its main office, as set forth in its articles of association, is located.  *Wachovia Bank v. Schmidt*, 546 U.S. 303, 307 (2006).  As the Defendants have admitted they are citizens of Georgia and the record shows the Plaintiff's main office is located in South Carolina, the Court concludes it has subject matter jurisdiction.

O.C.G.A. § 13-1-11(a) deems "[o]bligations to pay attorney's fees upon any note or other evidence of indebtedness" enforceable as long as:

> (1) the [guaranty]'s terms include an obligation to pay attorney fees; (2) the debt owed under the note has matured; (3) notice was given to the debtor informing him that if he pays the debt within ten days of the notice's receipt, he may avoid attorney fees; (4) the ten day period has expired without payment of the principal and interest in full; and (5) the debt is collected by or through an attorney.

*TermNet Merch. Servs., Inc. v. Phillips*, 277 Ga. 342, 344, 588 S.E.2d 745, 747 (2003) (citing O.C.G.A. § 13-1-11(a)). All five prerequisites have been met in this case. The guaranties provide for the collection of reasonable attorneys' fees, the debt has matured, the Plaintiff gave the appropriate notice to the Guarantors via the demand letters, the Guarantors did not pay the debt within ten days, and the debt is being collected by an attorney.

If the guaranty provides for "reasonable attorney's fees" but does not specify a percentage, "such provision shall be construed to mean 15 percent of the first $500.00 of principal and interest owing on such note or other evidence of indebtedness and 10 percent of the amount of principal and interest owing thereon in excess of $500.00." O.C.G.A. § 13-1-11(a)(2). Thus, the Guarantors are liable for $43,211.91 in attorneys' fees, which includes $16,772.16 in attorneys' fees under Note 1[10] and $26,439.75 in attorneys' fees under Note 2.[11]

---

[10] (($153,250.00 principal + $14,221.58 interest - $500) x 0.10) + $75 = $16,772.16

[11] (($229,963.13 principal + $34,184.41 interest - $500) x 0.10) + $75 = $26,439.75

### III. CONCLUSION

The Plaintiff's motion for summary judgment is **GRANTED**. The Defendants are jointly and severally liable for $190,227.40, which is the amount due under Note 1. Defendants Southland and Dumas are also jointly and severally liable for $327,132.64, which is the amount due under Note 2, plus the attorneys' fees due under Note 1 and Note 2.

**SO ORDERED,** this 4th day of November, 2014.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT